**Lindy J. AMYX, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. C–1–81–728.

United States. District Court,
S. D. Ohio, W. D.

Oct. 16, 1981.

Jonathon O. Nerenberg, Hamilton, Ohio,
for plaintiff.

Seth G. Heald, Tax Div., Dept. of Justice, Washington, D. C., for IRS.

### OPINION AND ORDER

SPIEGEL, District Judge:

This Opinion will also constitute our Findings of Fact and Conclusions of Law.

This case came before this Court upon a complaint by plaintiff, Lindy J. Amyx, against the United States of America, and the United States Attorney, defendants. The complaint was brought pursuant to 26 U.S.C. § 7429, which provides for an expedited hearing in the United States District Court whenever the Internal Revenue Service has made a termination assessment of federal income tax against a taxpayer. A termination assessment may be made against any taxpayer whenever the Service finds that the assessment or collection of that taxpayer's taxes is jeopardized. Notice of the assessment and a demand for payment must be made on the taxpayer. 26 U.S.C. § 6851. Once these steps are taken, the IRS is authorized to immediately file notice of liens and levy upon the taxpayer's property to effect collection of the tax.

The power of the IRS to make a termination assessment is limited by 28 U.S.C. § 7429, which provides for an expedited judicial review of the assessment. Section 7429 provides that the District Court is to determine whether the assessment is reasonable under the circumstances and whether the amount so assessed is appropriate under the circumstances. The United States has the burden of proving that the making of the assessment is reasonable under the circumstances. The taxpayer has the burden of proof in challenging the reasonableness of the amount assessed. § 7429(g).

On March 26, 1981, pursuant to a valid warrant, plaintiff Amyx was arrested and more than 60 pounds of marijuana were seized by the police, along with personal papers that appeared to be financial records of accounts receivable, a scale, and other types of drugs. Amyx was subsequently convicted of trafficking in marijuana.

On June 29, 1981, police again searched Amyx's residence, pursuant to a valid search warrant. A small quantity of drugs was found, as well as $32,000 in cash. The Hamilton police took the money which is now in possession of the City of Hamilton.

Based on this information and the fact that Amyx had filed no income tax returns in recent years, the IRS made a termination assessment against Amyx in the amount of $20,642.65. A "net worth and expenditures" method of computation was used to reconstruct Amyx's income, as authorized by § 446(b) of the Internal Revenue Code. The cash ($32,000), plus the value of the marijuana (valued at $250 per pound) were reflected as assets of plaintiff Amyx. To this amount was added a cost of living estimate based on statistics developed by the United States Department of Labor. The amount of tax due was then computed, based on this total figure. A levy in the amount of the assessment was thereafter filed on the City of Hamilton which has possession of the $32,000. The IRS has not yet collected any of the assessed tax.

The question before this Court is whether the making of the tax assessment was reasonable under the circumstances. In other words, was the IRS reasonable in its belief that its ability to collect income tax from Amyx was in jeopardy at the time the termination assessment was made? At the outset, we note that we are not limited to consideration of the evidence available to the IRS at the time the assessment was made.

■ We believe the Government carried its burden of proof as to the reasonableness of the termination assessment against Lindy Amyx. Amyx was found in possession of more than 60 pounds of marijuana and other drugs, personal records indicating a number of financial transactions concerning large amounts of money, plus $32,000 in cash. The question is not whether the money belongs to Lindy Amyx; we make no determination whether the money actually belongs to Amyx or to Mr. Henry Howard. We hold only that in light of all the circum-

stances the Government was reasonable in its belief that it was in jeopardy of collecting tax due for the current year.

■ The records confiscated from plaintiff indicate payments of over $43,000 to Amyx from January to March 1981. Even though not figured into the IRS computation, these payments may be considered by us in determining whether the Government acted reasonably. Amyx filed no income tax return in recent years. In light of these factors, it was reasonable for the IRS to believe that Amyx might attempt to conceal his earnings from the IRS. Additionally, it is reasonable to believe that plaintiff did not develop such a large business in three months, but that he was engaged in such business prior to 1981. In fact, the records indicate money owed to plaintiff in December 1980, even though not paid until January 1981. Therefore, it was reasonable to conclude that plaintiff had been earning income through illegal activities, had not been reporting that income to the IRS, and that plaintiff was therefore designing to place his property beyond the reach of the Government.

In sum, we do not accept plaintiff's assertion that the central issue is the ownership of the money confiscated. The money may or may not belong to Lindy Amyx and this issue will be finally decided in another forum. Our responsibility is limited to determining whether the Government acted reasonably under all the circumstances and we hold that the Government was reasonable in making its termination assessment.

■ The second question we must address is whether the amount of tax assessed against the plaintiff is appropriate under the circumstances. The amount of termination assessment in an action pursuant to § 7429 is presumed to be reasonable and the burden of proof is on the taxpayer to prove otherwise. § 7429(g)(2). The question therefore is not whether Amyx owes $20,642.65 to the IRS, but whether this is a reasonable assessment under the circumstances. Plaintiff's actual tax liability will be determined at some future time in another forum.

■ Plaintiff questions the inclusion of the $32,000 cash seized from his residence as taxable income to him. Again, however, we note that our responsibility is only to determine whether the Government acted reasonably in treating the cash as taxable income to Amyx, not the ultimate question of ownership. In a very similar case, the United States District Court in Pennsylvania addressed the same issue. The Court stated:

> The short answer to this contention is that *Loretto* may, in fact, ultimately establish that, for one reason or another, the $14,050 cannot be attributed to him as taxable income. At this stage, however, the only issue to be decided is the reasonableness of the termination assessment against *Loretto*.... It would contravene the clear intent of Congress if I were to abate this assessment simply because the Secretary has not proven that the $14,050 represents taxable income to *Loretto*. It is sufficient that the secretary acted reasonably in treating the money as taxable income to *Loretto* and I hold that he did so.

*Loretto v. United States*, 440 F.Supp. 1168, 1175 (D.C.Pa.1977).

We adopt the reasoning of the Pennsylvania court. Because of the nature of the jeopardy assessment which requires prompt action on the part of the Government, it would not be possible for the Government to accurately determine the taxpayer's precise liability. *See Homan Manufacturing Company v. Long*, 242 F.2d 645, 650 (7th Cir. 1957). The record indicates over $43,-000 paid to Amyx that was not included in the Government's net worth computation. Therefore, even if it is ultimately determined that the $32,000 in cash does not belong to Amyx, he still may have a significant tax liability.

■ We hold the Government acted reasonably in determining the amount of Amyx's taxable income for this year, and Amyx has failed to meet his burden of persuading this Court that the amount of the assessment is inappropriate under the

circumstances. The cash was found under Amyx's bed and it is not unreasonable to conclude that the money belongs to Amyx for purposes of a termination assessment. As noted by the *Loretto* court, the final question of plaintiff's actual taxable income and tax liability will be determined at another time.

The immediate hardship to plaintiff is slight while the potential loss to the Government is great. If we were to abate the assessment, the levy against the money held by the Hamilton police would also necessarily abate. This would put the Government in a position of possibly never being able to collect the tax due. On the other hand, Amyx claims the money does not belong to him and is therefore not injured or even affected by the levy. A lawsuit is currently pending in the Butler County Court of Common Pleas in which Henry Howard is seeking return of the money from the City of Hamilton. While we regret the inconvenience caused Mr. Howard, we have no jurisdiction to determine the merits of his claim against the City of Hamilton. Similarly, we cannot decide the amount of income tax that Amyx owes the Government. Further proceedings are necessary to determine that ultimate question.

We hold, therefore, that the Government carried its burden of proof that the termination assessment is reasonable under the circumstances and that Amyx failed his burden of proving that the amount of the assessment is inappropriate under the circumstances.

Judgment is entered in favor of defendant and against plaintiff.

SO ORDERED.