**Salvador MAGLUTA, Plaintiff,**

v.

**UNITED STATES of America, Defendants.**

**Augusto FALCON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Nos. 96–1668–CIV–MOORE, 96–1669–CIV–MOORE.**

United States District Court, S.D. Florida, Miami Division.

Dec. 16, 1996.

David M. Garvin, Miami, FL, for both plaintiffs.

Jose Francisco De Leon, United States Department of Justice, Tax Division, Washington, DC, for defendant.

### OMNIBUS ORDER ON ACTIONS TO ABATE JEOPARDY ASSESSMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon (1) Plaintiff Salvador Magluta's Action to Abate Jeopardy Assessment (DE # 1 in Case No. 96–1668–CIV–MOORE); and (2) Plaintiff Augusto Falcon's Action to Abate Jeopardy Assessment (DE # 1 in Case No. 96–1669–CIV–MOORE).

THE COURT has considered the Complaints, responses, and the pertinent portions of the record. There are two actions presently before the Court. In the earlier-filed action (Case No. 96–1668–CIV–MOORE), the Plaintiff is Salvador Magluta ("Magluta"); in the other action (Case No. 96–1669–CIV–MOORE), the Plaintiff is Augusto Falcon ("Falcon"). The Court has not consolidated these two actions; however, the Court recognizes that the actions involve common issues of law and parallel facts. As such, the Court held a consolidated hearing on August 1, 1996, and the parties filed consolidated memoranda of law. The Court now addresses both actions to abate jeopardy assessment in one order and enters the following Order.

## BACKGROUND

### I. Salvador Magluta

The facts which give rise to the jeopardy assessment in this action arise out of Magluta's alleged involvement with illegal narcotics. In 1979, Magluta was convicted of a drug-related offense in Dade County, Florida and sentenced to fourteen months incarceration. Magluta was released on bond pending appeal and eventually found to be a fugitive. During the 1980s, Magluta was under investigation for possible involvement with illegal narcotics. In 1985, Magluta was arrested for another drug-related offense in Los Angeles, California. Magluta again became a fugitive. In March 1988, Magluta was located by law enforcement authorities in Miami, Florida. Magluta gave a false name, *i.e.*, Santiago Menendez, and was eventually arrested. Once again, Magluta became a fugitive.

On October 15, 1991, Magluta was arrested by federal agents. At the time of his arrest, federal agents seized currency and personal items pursuant to the forfeiture counts of the indictment (the "Seized Assets"). Included among Magluta's personal items were numerous false identification cards with Magluta's picture and matching credit cards and passports. On February 16, 1996, Magluta was acquitted in *United States v. Augusto Falcon, et al.,* Case No. 91–6060–CR–MORENO. Immediately thereafter, Magluta moved for the release of the Seized Assets.

On March 1, 1996, the Internal Revenue Service ("IRS") made a jeopardy assessment on Magluta for his federal income tax liabilities for the 1982 calendar year in the amount of $2,461,301.00 as follows: $426,045.00 in taxable income, $717,464.00 in penalties, and $1,317,792.00 in interest. Upon exhausting his administrative remedies, Magluta filed the instant action to abate jeopardy assessment. At the time of the making of the jeopardy assessment, Magluta was under indictment in the Middle District of Florida on money laundering charges. Shortly after the making of the jeopardy assessment, Magluta was indicted in the Southern District of Florida with numerous offenses relating to the use of false identities.

### II. Augusto Falcon

The facts which give rise to the jeopardy assessment in this action also arise out of Falcon's alleged involvement with illegal narcotics and parallel the facts relating to Magluta. In 1979, Falcon was convicted of a drug-related offense in Dade County, Florida and was sentenced to fourteen months imprisonment. Falcon was released on bond pending appeal and eventually found to be a fugitive. In 1985, Falcon was arrested on another drug-related offense in Los Angeles, California. At the time of his arrest, Falcon gave the California agents a false name. Shortly thereafter, Falcon was found to be a fugitive again. Subsequently, Falcon was charged on three different indictments in Florida. On October 16, 1991, Falcon was arrested and was living in Fort Lauderdale, Florida under a false name. At the time of his arrest, the government also seized certain currency and personal items pursuant to the forfeiture counts in the indictment (the "Seized Assets"). On February 16, 1996, Falcon was acquitted in *United States v. Augusto Falcon, et al.,* Case No. 91–6060–CR–MORENO. Immediately thereafter, Falcon moved for the release of the Seized Assets.

On March 1, 1996, the IRS made a jeopardy assessment on Falcon for his federal income tax liabilities for the 1982 calendar year in the amount of $4,880,286.00 as follows: $844,765.00 in taxable income, $1,422,593.00 in penalties, and $2,612,928.00 in interest. At the time of the making of the jeopardy assessment, Falcon was indicted in the Southern District of Florida with certain firearms violations. Falcon also was under indictment in the Middle District of Florida on money laundering charges.

### III. The Making of the Jeopardy Assessments

As stated above, the IRS made jeopardy assessments on Magluta and Falcon on March 1, 1996. Magluta and Falcon then commenced the instant actions to abate their respective jeopardy assessments. At the August 1, 1996 hearing before the Court, Revenue Agent Ronald E. Megen ("Megen"), who conducted the investigation on Magluta and

Falcon, testified. Megen testified that the investigation of whether the collection of taxes due from Magluta and Falcon was in jeopardy was prompted by the possible return of the Seized Assets. In the course of his investigation, Megen concluded that Magluta and Falcon had not filed their respective income tax returns for the 1982 calendar year. Megen also determined that both Magluta and Falcon had used false identities, including driver's licenses and passports, had set up foreign bank accounts, had been indicted or convicted on drug-related offenses, and had been declared fugitives. Based on the possible return of the Seized Assets and Magluta's and Falcon's respective backgrounds, Megen concluded that the collection of taxes due for the 1982 calendar year might be in jeopardy. The IRS thereafter noticed the jeopardy assessments on Magluta and Falcon for the 1982 calendar year.

## DISCUSSION

The Court has jurisdiction over these actions pursuant to 26 U.S.C. § 7429(b) and 28 U.S.C. § 1346(e).

■ Under the Internal Revenue Code, the IRS is authorized to make jeopardy assessments when it determines that the collection of taxes is in jeopardy. 26 U.S.C. §§ 6861–6862. In such an instance, the IRS is authorized immediately to: determine the tax due, serve notice upon the taxpayer, demand payment, and levy upon the taxpayer's property. 26 U.S.C. § 6331(a). A taxpayer, however, may challenge the making of the jeopardy assessment pursuant to 26 U.S.C. § 7429. When making such a challenge, the court's review of the jeopardy assessment is limited to: (1) whether the making of an assessment is reasonable under the circumstances, and (2) whether an amount assessed as a result of an action taken is appropriate under the circumstances. 26 U.S.C. § 7429(g). The court's determination is final, conclusive, and non-reviewable by any other court. 26 U.S.C. § 7429(f); see Central De Gas De Chihuahua, S.A. v. United States, 790 F.Supp. 1302 (W.D.Tex.1992).

■ In determining the reasonableness of the jeopardy assessment, the court can take into account information available to the government at the time of the assessment and any other information which bears on this issue. S.Rep. No. 94–938, 94th Cong., 2d Sess. 365, reprinted 1976 U.S.Code Cong. & Ad.News 2897, 3794. Furthermore, since a jeopardy assessment case is a summary proceeding rather than a full evidentiary hearing, the court is entitled to rely on evidence that might otherwise be inadmissible at trial on the merits in conducting its review. See Harvey v. United States, 730 F.Supp. 1097, 1104 (S.D.Fla.1990) (citations omitted).

## I. The Reasonableness of the Making of the Jeopardy Assessments

■ The government has the burden of establishing that the jeopardy assessment was reasonable under the circumstances. 26 U.S.C. § 7429(g)(1). "Reasonableness under the circumstances" has been held to mean something more than "not arbitrary or capricious" and something less than "supported by substantial evidence." Harvey, 730 F.Supp. at 1104; Felkel v. United States, 570 F.Supp. 833, 838 (D.S.C.1983); Nolan v. United States, 539 F.Supp. 788, 790 (D.Ariz.1982); Loretto v. United States, 440 F.Supp. 1168, 1172 (E.D.Pa.1977).

Legislative history suggests that the making of a jeopardy assessment is reasonable if any one of the following conditions is met:

(1) the taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself;

(2) the taxpayer is or appears to be designing quickly to place his property beyond the reach of the government either by removing it from the United States or by concealing it, or by transferring it to other persons, or by dissipating it; or

(3) the taxpayer's financial solvency appears to be imperiled.

S.Rep. No. 94–938, 94th Cong., 2d Sess. 360, reprinted 1976 U.S.Code Cong. & Ad.News 2897, 3790 n. 1; see also Nolan, 539 F.Supp. at 790.

■ In determining whether one of the three circumstances stated above is present, there are many factors which the court may consider. The court, for instance, may con-

sider whether the taxpayer is involved in illegal activity. *Mueller v. C.I.R.,* 882 F.Supp. 1060, 1062 (S.D.Fla.1995); *Harvey,* 730 F.Supp. at 1106 (citing *Young v. United States,* 671 F.Supp. 1340 (S.D.Fla.1987)). The court also may consider: (1) whether the taxpayer possesses, or deals in, large amounts of cash; (2) whether prior tax returns reporting little or no income despite possession of large amounts of cash; (3) whether assets have been dissipated through forfeiture, expenditures for attorney's fees, appearance bonds; (4) whether there is a lack of assets from which potential tax liability can be collected; (5) whether the taxpayer has used aliases which makes it more difficult to locate either the taxpayer or his assets; (6) whether the taxpayer has failed to supply appropriate financial information; and (7) whether the taxpayer has used multiple addresses, making it hard to find the taxpayer. *Mesher v. United States,* 736 F.Supp. 233, 235–36 (D.Or.1990).

The government relies on Magluta's and Falcon's backgrounds, particularly their history of illegal activity and use of false identities, to justify the making of the jeopardy assessments. Indeed, it is true that both Magluta and Falcon were indicted and also convicted of drug-related offenses, both Magluta and Falcon were under indictment at the time of the making of the jeopardy assessments, both have been declared fugitives on more than one occasion, and both have used false identities. Based on these facts, the conclusion certainly can be reached that the jeopardy assessments were reasonable under the circumstances.

Magluta and Falcon, however, point out that the information in the government's possession at the time of the making of the jeopardy assessments was more than five years old. Based on the age of the evidence, Magluta and Falcon argue that it cannot be said that the collection of these taxes was in "jeopardy." The Court, however, does not find the age of the evidence to be fatal to the

government's argument. The Court notes that, during a substantial portion of the time giving rise to the staleness argument, Magluta and Falcon were pretrial detained. Thus, it is at least arguable that Magluta's and Falcon's acquittals and subsequent releases from detention increase the likelihood that one or more of the conditions giving rise to the jeopardy assessments may be found to exist.[1]

Magluta and Falcon, furthermore, suggest that the making of the jeopardy assessments was prompted solely by retaliatory motives following their acquittals. Magluta and Falcon rely on two cases in support of this argument: *Snyder v. United States,* No. M–84–3171, 1984 WL 1421 (D.C.Md. Nov. 14, 1984) and *Swegles v. United States,* No. 86–5514, 1987 WL 16950 (C.D.Cal. Feb. 27, 1987). Although it is true that the *Snyder* and *Swegles* courts abated the jeopardy assessments, the Court does not find either of these cases wholly applicable to Magluta's and Falcon's situations.

In *Snyder,* the IRS relied principally on Snyder's tax related criminal convictions in making the jeopardy assessment. In rejecting the IRS's argument, the *Snyder* court noted that all of the cases cited by the IRS regarding criminal convictions involved a finding that there was at least probable cause to believe that the taxpayer was engaged in illegal business activities. *Snyder,* 1984 WL 1421 at * 3. The *Snyder* court indicated that there was no evidence that any of Snyder's business dealings were illegal. *Id.* To the contrary, in the instant actions, the IRS has presented evidence that Magluta and Falcon are involved with illegal business activities.

In *Swegles,* the IRS noticed a jeopardy assessment against Charles Swegles upon learning that approximately $200,000.00 that had been forfeited in connection with Swegles's criminal case might be returned to him. That jeopardy assessment was abated because of a procedural defect. The IRS

---

1. The Court acknowledges that, following his acquittal in *United States v. Augusto Falcon, et al.,* 91–6060–CR–MORENO (S.D.Fla.), Falcon was pretrial detained in *United States v. Augusto Falcon,* 88–327–CR–MARCUS (S.D.Fla.) (firearms violations).

The Court notes, moreover, that Magluta's and Falcon's claims of staleness are unaccompanied by any showing of prejudice caused by the delay.

then proceeded to make a second jeopardy assessment several months later for almost the same amount as the previous assessment. Although the *Swegles* court noted that the evidence proffered against the Swegles was more than two years old, 1987 WL 16950 at *2, this factor was not the determining factor in the Swegles court's decision to abate the jeopardy assessment. Indeed, the *Swegles* court noted that the Swegles' large amounts of cash, low reported income, history of concealing assets overseas, and criminal convictions supported the IRS's argument that the making of the jeopardy assessment was reasonable and intimated that the court would have upheld the first jeopardy assessment had it been procedurally proper. *Id.*

Based on the foregoing, the Court finds that the government has met its burden of demonstrating that the jeopardy assessments on Magluta and Falcon were reasonable under the circumstances. Accordingly, the Court turns to the next issue, *i.e.*, whether the amounts assessed were reasonable.

## II. The Reasonableness of the Amounts Assessed

■ In determining whether the amount assessed is appropriate, the burden ultimately rests on the taxpayer. 26 U.S.C. § 7429(g)(2). As stated above, determining whether the amount assessed is appropriate under the circumstances does not require a determination of the ultimate tax liability. "Rather, the issue to be determined is whether, based on the information then available, the amount of the assessment is reasonable." S.Rep. No. 94–938, 94th Cong., 2d Sess. 365, *reprinted* 1976 U.S.Code Cong. & Ad. News 2897, 3794. Again, reasonableness means more than "arbitrary and capricious" but less than "supported by substantial evidence."

■ Generally, the amounts assessed by the IRS are presumed to be reasonable and appropriate under the circumstances. *Granse v. United States*, 892 F.Supp. 219, 224 (D.Minn.1995); *Felkel*, 570 F.Supp. at 841. It has been said that "[o]f necessity, the government must resort to assumptions, presumptions and interpolation." *Granse*, 892 F.Supp. at 224 (quotation omitted). Accordingly, the court should look at the method utilized by the IRS in making the assessment. The burden rests on the taxpayer to prove that the method used is "fatally defective, irrational, arbitrary or unsupported." *Id.* (quotation omitted).

■ At the August 1, 1996 hearing, Revenue Megen testified that he utilized the cash expenditure method in determining Magluta's and Falcon's respective tax liabilities for the 1982 calendar year. Megen further testified that he reviewed the testimony and evidence presented in the criminal trial and used those materials that could have pertained to Magluta's and Falcon's respective tax liabilities for the 1982 tax year. The Court cannot say that the method utilized was unreasonable. Indeed, given Magluta's and Falcon's backgrounds and their failure to file tax returns other than Fifth Amendment returns, the government justifiably relied on assumptions and projections.

■ Magluta and Falcon, nonetheless, argue that the amounts assessed are not appropriate for the following reasons:

1. The time limit on assessments and collection of returns has expired.

2. The failure to file penalties, assessed pursuant to 26 U.S.C. § 6651(a)(i) and negligence penalties assessed pursuant to § 6653(a)(i) are not appropriate since Plaintiffs filed returns for the 1982 year.

3. The government's position is barred by collateral estoppel. The legal and factual allegations essential to the determination of the amounts of the jeopardy assessments were resolved in the criminal case before Judge Moreno.

4. The government has failed to show a substantial non-arbitrary basis for the amounts of the jeopardy assessments.

5. The amounts of the jeopardy assessments were based on information derived from improper disclosure to the IRS Commissioners of "matters occurring before" one or more of federal grand juries in violation of Fed.R.Cr.P. 6(3).

The only argument which merits discussion is the collateral estoppel argument. Magluta

and Falcon rely on *Selbe v. United States,* 899 F.Supp. 1524 (W.D.Va.1995) in support of this argument. First, the Court notes that the *Selbe* decision is not binding on the Court. Second, the Court finds the *Selbe* case inapposite to the instant matters.

In *Selbe,* the court applied the doctrine of collateral estoppel to preclude the government from arguing that Selbe's failure to disclose a $350,000.00 note justified the making of the jeopardy assessment. *Id.* at 1526. In finding collateral estoppel applicable, the court noted that it had expressly determined, as a matter of law, that Selbe had not made a false statement with respect to the note. *Id.* at 1525. The Court further noted:

> The government is correct that were this a purely factual determination, the different standard of proof would mean that Selbe's acquittal would not have preclusive effect in a subsequent civil suit . . .

*Id.* at 1526. The Magluta and Falcon situations involve issues of fact, not law. Therefore, the doctrine of collateral estoppel is not available.

 Indeed, it should be noted that collateral estoppel is available only if three prerequisites are met: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that earlier decision. *See Vazquez v. Metropolitan Dade County,* 968 F.2d 1101, 1107 (11th Cir.1992) (citing *Precision Air Parts v. Avco Corp.,* 736 F.2d 1499, 1501 (11th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985)). Applying this standard, the Court finds that the doctrine of collateral estoppel is not available to Magluta or Falcon as the three prerequisites have not been satisfied.

Since it is not the Court's function to determine the proper tax amount, the Court cannot say that Megen's efforts to ascertain Magluta's and Falcon's respective cash expenditures were unreasonable. Therefore, the Court finds that Magluta and Falcon have not sustained their burden of demonstrating that the amounts assessed were not reasonable.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

1. Plaintiff Salvador Magluta's Action to Abate Jeopardy Assessment (DE # 1 in Case No. 96–1668–CIV–MOORE) is DENIED.

2. Plaintiff Augusto Falcon's Action to Abate Jeopardy Assessment (DE # 1 in Case No. 96–1669–CIV–MOORE) is DENIED.

3. All pending motions not otherwise ruled on are DENIED AS MOOT.